76; Shepard v. Manhattan R. R. Co., 117 N. Y. 442, 23 N. E. 30; Miles v. Dover Furnace Co., 125 N. Y. 294, 26 N. E. 261; Witherbee v. Meyer, 84 Hun, 146, 3 N. Y. Supp. 537, s. c. affirmed in 155 N. Y. 446, 50 N. E. 58; Peck v. Richardson (Sup.) 44 N. Y. Supp. 919; Tew v. Wolfsohn, 77 App. Div. 454, 79 N. Y. Supp. 286, s. c. affirmed, 174 N. Y. 272, 66 N. E. 934; Moss v. Cohen, 158 N. Y. 240, 53 N. E. 8; Hirsh v. Manhattan R. R. Co., 84 App. Div. 374, 82 N. Y. Supp. 754. I think from this line of authorities it will be found that the defect in the complaint, if any, cannot be remedied by demurrer.

The demurrer must therefore be overruled, and an interlocutory judgment entered, with costs, with leave to answer within 20 days on payment of costs.

---

(102 App. Div. 485.)

### WANAMAKER v. POWERS.

(Supreme Court, Appellate Division, Second Department. March 10, 1905.)

1. GUARANTY—DISCLOSURE OF CONDITION OF DEBTOR—DEFENSE.

   Where a debtor solicited a person to become guarantor to his creditor, the fact that the indebtedness was not disclosed to the guarantor could not be taken advantage of by him to defeat his liability, in the absence of his having made inquiry concerning the condition of the debtor.

2. SAME—CONSTRUCTION.

   Where a guaranty for the purpose of procuring an extension of credit limited the amount to $250 per month, and provided that the guarantor would pay on demand, on default of the principal, the monthly accounts on the 10th day of the month following the purchase, the guarantor was liable for every default which existed on the 10th day of the month, when demand was made on him in a reasonable time after its occurrence.

3. SAME—PAYMENTS—APPLICATION BY CREDITOR.

   Where a debtor owes several debts to one creditor, and makes payment generally, an application by the creditor of the money paid is conclusive, when made before the account is questioned in the courts, as between the creditor and a guarantor on part of the indebtedness, in the absence of any stipulation in the contract of guaranty as to the application of payments.

   [Ed. Note.—For cases in point, see vol. 25, Cent. Dig. Guaranty, § 70.]

4. SAME—RELEASE OF CO-SURETY—EFFECT.

   Where a guarantied creditor releases a separate co-surety for part of the guarantied debt, other separate sureties are only exonerated from so much of the whole debt as the co-surety who was discharged could have been compelled to pay over and above his actual payment.

   [Ed. Note.—For cases in point, see vol. 40, Cent. Dig. Principal and Surety, §§ 269–282.]

5. SAME—DESTRUCTION OF INSTRUMENT.

   Where a guarantied creditor returned the guaranty to a separate co-surety, and it was destroyed by such co-surety, there was a release of the surety to whom it was returned, as between the guarantied creditor and other sureties.

Appeal from Special Term, Westchester County.

Action by John Wanamaker against Thomas J. Powers, Jr. From a judgment for plaintiff, defendant appeals. Affirmed.

Following is the report of the referee:

It is admitted that the balance now due the plaintiff from Dye is the sum of $357.31. It therefore follows that, if the payments made by Dye to the

plaintiff since the execution of the guaranty were properly applied by the plaintiff to the payment of the amount due on the 21st day of September. 1901, the date of the execution of the guaranty, the plaintiff would be entitled to judgment against the defendant in the said sum of $357.31, with interest thereon from the date of demand, if it were not for the discharge of the guarantor, Pugsley, hereinafter stated. The date of that demand is not specifically given, but it is stated to have been before the commencement of this action, which appears to have been about the 6th day of May, 1902. I have therefore assumed May 5th as the date of the demand. The guaranty upon which the action is brought reads as follows:

"In consideration of the firm of John Wanamaker, as now constituted, or hereafter formed, granting credit at my request for the purchase of merchandise, to Emery W. Dye, at present residing at No. 935 Main street, Peekskill, N. Y., to an amount not exceeding two hundred and fifty dollars per month, I hereby agree to guarantee the payment of, and will pay on demand upon the default of the said Emery W. Dye, said monthly accounts on the 10th day of the month following said purchase. Notice of separate transactions is waived. This guarantee is to continue from month to month until revoked by me in writing, and the amount due thereon is settled in full to date of revocation.

"Dated, 20th day of September, 1901.

                                        "Thomas J. Powers, Jr.

"Witness, Frank M. Horton.

"This guarantee and promise to pay is accepted.

                                        "John Wanamaker, Per ————."

The defendant alleges three grounds of defense: First. That the plaintiff was bound by the contract to give to the defendant notice on or before the 10th day of the month following any purchase made by Dye under or in pursuance of the agreement of guaranty, or of any default by said Dye in payment therefor, and that the defendant should not be liable for the amount of such purchases, or for any monthly balance which might be due to the plaintiff from Dye, unless a notice of said default, or of Dye's failure to pay such monthly accounts, was given by the plaintiff to the defendant on or before the 10th day of the month following such purchase; and that such notice has not been given. That by reason of said failure to give such notice defendant has been greatly injured and prejudiced in his rights against his principal, Dye, who has been at all times insolvent; and that by reason of such failure Dye was permitted to receive large consignments of goods from plaintiff, who knew at all times that Dye was insolvent; and that, if plaintiff had any such notice, defendant would have prevented such consignments, and protected himself from liability. Second. That at the time of making the guaranty Dye was largely indebted to the plaintiff in a sum exceeding that for which he is now indebted, of which plaintiff did not tell defendant, and of which defendant had no knowledge; and that Dye has paid to the plaintiff, since the date of the giving of the contract of guaranty, a sum in excess of goods purchased by Dye since that date, and that by such payment all liability of the defendant has been paid and discharged. That said sum has been unjustly applied to the payment of said antecedent indebtedness, and that said prior indebtedness was secured by other and prior contracts of guaranty, and that all such payments should have been credited upon the monthly accounts for which defendant is alleged to be liable. Third. That the guaranty made by defendant was collateral to other and prior contracts of guaranty made by one Gingles and one Pugsley, whose liability was sufficient to pay the entire indebtedness of Dye alleged in the complaint, and that plaintiff has discharged them from all liability, and that, therefore, defendant has been discharged.

It was held by the Court of Appeals in the case of McKecknie v. Ward, 58 N. Y. 541, 17 Am. Rep. 281, that: "A contract of suretyship for the performance by a vendee of a continuing agreement of purchase and sale by which goods purchased from time to time, as required, are to be paid for at stated periods, is not discharged by mere forbearance on the part of the vendor to enforce payment as provided for by the contract without a binding agreement for extension of time. Beyond the bare neglect of the creditor to

enforce payment, there must be some act of connivance on his part in a fraud upon the surety, or of negligence so gross as to amount to a fraud." Also: "Nor is it the duty of the vendor to give notice to the surety of the amount of the purchases and of the failure of the vendee to make payment at the time specified until a reasonable time after default, which depends upon the circumstances of each case, and, in any event, failure to give notice will not discharge the surety further than he has sustained damage in consequence of the neglect." In this case, conceding that Dye was insolvent, and unable to pay his debts at the time the contract of guaranty was executed, it does not appear that the plaintiff was any party to concealing that fact from the defendant. It was Dye who solicited the defendant to become his surety, not the plaintiff; and the defendant could have protected himself by making proper inquiries of him at the time he agreed to become his surety. The very object of the execution of the guaranty was to enable Dye to obtain further credit from the plaintiff, and it seems to me that it was the defendant's duty to have inquired into and become possessed of all the circumstances, and not to rely upon the plaintiff for voluntarily disclosing the condition of Dye. Nor do I think that under the guaranty the plaintiff was required to make a demand upon the defendant for such monthly accounts on the 10th day of the month following said purchases under the rule laid down by the Court of Appeals in McKecknie v. Ward, supra. There is no evidence of fraud in this case, or of negligence so gross as to amount to a fraud. The plaintiff was entitled to a reasonable time to enforce the liability of the defendant by making a demand upon him. The true construction of the guaranty is not, in my opinion, that the guarantor should be liable upon the default of Dye, if demand was made on the 10th of the month following the purchases, but that he should be liable for every default which existed on said 10th day of the month, whenever a demand was made upon him within a reasonable time after its occurrence. In the case of McKecknie v. Ward, supra, Barnes was to receive the plaintiff's ale at the Central Railroad Depot in Syracuse, and pay the freight on the same, "and to pay to said James and Alexander McKecknie, or to some party authorized by them, on the first of each and every month, for the amount of ale delivered, at the price of one dollar less per barrel than the sum fixed by the said James and Alexander McKecknie for selling such ale after deducting the amount paid for freight," etc. The bond on which the action was brought was conditioned for the performance of said agreement by Barnes. Judge Folger, in his opinion, says, at page 546: "The point is that the conduct of the plaintiffs in allowing the account of Barnes for ale sold and delivered to go on from month to month for three years without exacting payment, according to the terms of the agreement, they all the while knowing that his indebtedness was large and increasing, and in omitting to give notice to the appellant thereof, operated to discharge the appellant from his suretyship." Speaking of the contract, the judge says, at page 547: "It is not for the payment of a definite sum at a given day. It is for a continuing transaction contemplating a recurring indebtedness to be made and extinguished monthly, renewable as often and as soon as paid." Such is the case here. The parties contemplated continuing transactions between Dye and the plaintiff, of which accounts were to be rendered to Dye monthly, to an amount not exceeding $250, and it was part of the guaranty that it should continue from month to month until revoked by Powers in writing and the amount due thereon is settled in full to date of revocation. I do not think that there is any sound distinction between the case at bar and the McKecknie Case. Furthermore, there is no proof that the defendant has been injured by the neglect of the plaintiff to give notice of the default of Dye, or to make a demand that the defendant pay the amount or such part thereof as the contract of guaranty called for. There is no proof that Powers would have stopped or revoked the running of the guaranty if such notice had been given him.

Second. As to the payment of the debts due to the plaintiff from Dye at the time the contract was made, it does not appear in any way from the evidence before me that Dye directed how the moneys paid by him should be applied, or disclosed the source from which they came. It is conceded that on the 21st day of September, 1901, the date of the guaranty, the balance due

from Dye to the plaintiff was $1,182.63. The account introduced in evidence shows that the plaintiff applied all the payments made by Dye in reduction of the amount then due and the amounts which subsequently became due. It was held by the Court of Appeals in the Bank of California v. Webb, 94 N. Y. 467, "that a debtor paying money to a creditor, to whom he owes several debts, must, as a general rule, exercise his option as to the application of the payment at the time it is made, and, if no direction is then given by him, the creditor may control the application, and, as between him and the debtor, there is no limit of time within which he must make the application, save that it be before it is made under the direction of the court, at least unless the debtor requests him to exercise his option." As before stated, at the time of the various payments made by Dye, no direction was given by him as to their application, and this case, therefore, I think, falls within the principle stated in the Bank of California v. Webb Case, supra. There Judge Earl, in delivering the opinion of the court, after citing several cases, at page 472 states the general rule as follows: "A debtor paying money to a creditor to whom he owes several debts may direct the application of the payment, because the money is his, and he may do as he will with it, and control its application; but the debtor must exercise his option as to the application when he makes the payment. After that the money has ceased to be his, and is no longer subject to his control. Then it belongs to the creditor, and he is master of it, and may control its application. As between him and his debtor, certainly, unless the debtor intervenes, and requests him to exercise his option, there can be no limit of time within which he must make the application; but if neither party makes any application of the payment, and the matter comes into court, then the court will make such application of the payment as equity and justice require."

In this case the plaintiff, having made the application of the moneys, the intervention of the court cannot be had to make a different application. There is nothing in the case of Orleans Bank v. Moore, 112 N. Y. 543, 20 N. E. 357, 3 L. R. A. 302, 8 Am. St. Rep. 775, which conflicts with, or in any manner alters, the decision of the Court of Appeals in the cases above cited, for the reason that that was a case in which the application of payments was made under the order of the court, no application having been made either by the debtor or creditor. There it was held that the rule giving a creditor holding several obligations or claims against his debtor in the absence of any application of the latter, is confined to cases of voluntary payments. The proceeds of a sale under a judgment of foreclosure of a mortgage given by the debtor to secure various debts are paid over to the creditor not as a voluntary payment, but by operation of law, and, in the absence of direction given in the security, their application is to be made by the court in accordance with equitable principles. I do not find that the authorities sustain the contention of the learned counsel for the defendant, that, in order to entitle a creditor, who has received a voluntary payment from his debtor, to apply such payment upon one of several debts, the intention to make such application must be communicated to the debtor. If the money has been paid by the debtor without any direction as to its application, it becomes the property of the creditor, who may make such application of it as to him sees fit. Bank of California v. Webb, 94 N. Y. 472. The case of Allen v. Culver, 3 Denio, 284, cited by the learned counsel for the defendant, seems to be authority against the proposition for which he contends, as there the court distinctly says: "If the party making the payment did not, at the same time, make any specific appropriation thereof, then the party to whom the payment is made may apply it as he pleases." It is true that the court also said: "The entry of payments by the creditor upon one account does not preclude him from applying them subsequently within a reasonable time to any other account to which he might have originally applied them, provided such entry has not been communicated to the party making the payment. This is upon the ground that the creditor making private entries in his book, which were not communicated to the other party, did not indicate a complete election so to appropriate the payments, but merely an idea of so appropriating them." That is far from being an authority for the proposition that the debtor has anything further to say as to the application of the payment.

All that can be said is that it is an authority for the right of the creditor to change his mind after he has made the entry upon his books.

In the case at bar there has been no exercise of such right. On the contrary, the plaintiff has, throughout the account, steadily adhered to the application indicated by the entries, and has affirmed it by the bringing of this action. It is, however, contended that this case falls within the exceptions stated in Hardin v. Tifft, 75 N. Y. 461, in which it was held that, if the money had been raised by the debtor by the aid of the indorsement of the surety, given for the express purpose of enabling the debtor to raise funds to pay the secured debt, and these facts had been communicated to the creditor, he would not be permitted, even with the consent of the debtor, to misapply it. The court, however, said in that case, at page 465: "But it can hardly be disputed that, if the debtor brought money thus raised to the creditor, and paid it to him expressly upon the unsecured debt, without disclosing the means by which the money had been raised, or any agreement as to its use, the payment would be valid. I think the same result follows when the debtor, by omitting to specify on which debt the payment has to be credited, authorizes the creditor to apply it to either, and the creditor exercises his option." It is argued by the learned counsel for the defendant that, as Wanamaker knew that Dye was insolvent, he is charged with notice that Dye could have no means of obtaining money except by the proceeds of the goods then being sold to him, for which he knew that the defendant was liable. It does not seem to me that this conclusion follows. As I have stated before, the guaranty, which was given by the defendant, was not procured by the plaintiff, but was given at the request of Dye by the defendant. The defendant also knew that it was given for the purpose of enabling Dye to obtain further credit from the plaintiff. If the defendant did not know that Dye would be entitled to pay other debts to the plaintiff than those for which the defendant was liable under the guaranty, it was incumbent, I think, upon him, to have it so stipulated. Nor is it shown by the evidence that the plaintiff knew that the money which Dye paid was obtained from the sale of the goods. The account was a running account, in which the plaintiff charged for the goods and gave credit for the cash received from Dye, and, for aught that the plaintiff knew, it might have been obtained from the other guarantors, or from other friends of Dye.

Third. It is further argued by defendant's counsel that the several guarantors, Loder, Goethe, Garrison, Foshay, Bushnell, Strang, Gingles and Pugsley, were co-sureties with the defendant, and that the release of any one of them from liability releases all to the extent that the remaining ones are prejudiced thereby, and the case of Morgan v. Smith, 70 N. Y. 537, is cited on his brief. That case involved a joint contract of suretyship, and it was held that: "The obligation of one of two co-sureties is to pay the whole debt. If he does so, he may recover of his co-surety one-half. If he pays less than the whole debt, he can only recover from the co-surety the amount which he has paid in excess of the moiety." And, further, "when a co-surety has, by the conduct of the creditor, been released from liability, another co-surety will be held exonerated only as to so much of the original debt as the one so discharged should have been compelled to pay." The case of Hood v. Haywood, 124 N. Y. 1, 26 N. E. 331, was also a case of a joint bond. Here the contracts of guaranty are separate, independent contracts, but, assuming that the defendant is to be regarded as a co-surety with the other guarantors, and that a settlement with one of them can inure to the benefit of the defendant, if the defendant is a joint surety with the other parties who were guarantors, he can be sued alone for the whole amount due to the extent of his guaranty, and he can, if he is thus compelled to pay more than he should have paid, bring an action against his co-sureties to recover such excess. Toucey v. Schell, 15 Misc. Rep. 350, 37 N. Y. Supp. 879, and cases cited. So, also, if the other guarantors had paid the indebtedness of Dye, and are to be regarded as joint sureties with the defendant, the latter could be compelled by them to contribute in an action brought for that purpose. It is contended, however, that by settling with Pugsley and receiving $160.72 from him, and surrendering the guaranty which he had given, the defendant has been released from his liability to the extent of $139.28, Pugsley's guaranty being

absolutely for $300. Conceding that Pugsley has been released, the defendant, as a co-surety, is only exonerated from so much of the whole debt as a co-surety who has been discharged could have been compelled to pay over and above his actual payment, to wit, $139.28. Morgan v. Smith, 70 N. Y. 539. There was no formal release given by the plaintiff to Pugsley, but the guaranty was returned to him and by him destroyed. This, I think, amounted to a release of the surety. Larkin v. Hardenbrook, 90 N. Y. 333, 43 Am. Rep. 176. Conceding that the transaction between the plaintiff and Pugsley. amounted to a release, it would appear that there should be allowed to the defendant a credit of $139.28. The account (Exhibit 1) which has been put in evidence, terminated on the 21st of May, 1902, which was after this action was commenced, and it shows a balance against Dye of $363.92. The amount admitted to be due on page 4 of the stenographer's minutes is $357.31. If we deduct the $139.28 from the sum admitted to be due from Dye, there still remains a balance due plaintiff from defendant as surety of $218.03. It is to be observed that the balance of $363.92 shown by Exhibit 1 is arrived at after crediting the sum paid by Gingles, $314.82. I do not find that there was any release given to him, and, as the amount paid by him is credited to Dye upon the account, the defendant has not been injured, but has been benefited by that payment. There has been no release or discharge of the other guarantors proven, and, if the defendant is obliged to pay more than his proportion of the indebtedness of Dye, he can, as above stated, call upon them for contribution.

I am therefore of the opinion that the plaintiff is entitled to judgment against the defendant for the sum of $218.03, with interest from May 5, 1902.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, HOOKER, RICH, and MILLER, JJ.

Nathan P. Bushnell, for appellant.
Truax, Watson & Roberts, for respondent.

PER CURIAM. Judgment affirmed, with costs, upon the opinion of Hon. Abraham R. Lawrence, referee.

---

### SAMUELS v. ARMSTRONG.

(Supreme Court, Special Term, Delaware County. January 18, 1905.)

NATURAL STREAMS—DIVERSION OF WATER—USE FOR COMMERCIAL PURPOSES.
     One through whose land a stream flows has no right, as against a lower riparian owner, to divert it to a reservoir, and use the ice there formed for commercial purposes.
     [Ed. Note.—For cases in point, see vol. 48, Cent. Dig. Waters and Water Courses, §§ 33–37, 67–71.]

Action by Isaac Samuels against Walter Armstrong. Judgment for plaintiff.

B. & C. B. Johnson, for plaintiff.
Wagner & Fisher, for defendant.

FORBES, J. This is an action to restrain the diversion of water from a natural stream known as the "Tremperskill," located near Andes, in the county of Delaware. Aside from the fact of the amount of water which could be and was taken from the stream through the outlet, there is very little dispute upon any question of fact. The plaintiff and the defendant owned farms adjoining. North of the plain-